J-S22018-16
J-S22019-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF R.B.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| IN RE: ADOPTION OF C.W.S., A MINOR | : | PENNSYLVANIA |
| IN RE: ADOPTION OF H.M.S., A MINOR | : | |
| | : | No. 1912 MDA 2015 |
| | : | No. 1913 MDA 2015 |
| APPEAL OF: E.W.S., FATHER | : | No. 1914 MDA 2015 |

Appeal from the Decree October 2, 2015
in the Court of Common Pleas of York County,
Orphans' Court, at No(s): 2015-0060, 2015-0061, and 2015-0062

| | | |
|---|---|---|
| IN THE INTEREST OF: H.M.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| IN THE INTEREST OF: R.B.S., A MINOR | : | PENNSYLVANIA |
| IN THE INTEREST OF: C.W.S., A MINOR | : | |
| | : | No. 1926 MDA 2015 |
| | : | No. 1927 MDA 2015 |
| APPEAL OF: E.W.S., FATHER | : | No. 1928 MDA 2015 |

Appeal from the Order October 2, 2015
in the Court of Common Pleas of York County,
Juvenile Division, at No(s): CP-67-DP-0000060-2014,
CP-67-DP-0000062-2014, CP-67-DP-0000061-2014

BEFORE:    MUNDY, DUBOW, and STRASSBURGER,* J.

MEMORANDUM BY STRASSBURGER, J.:                **FILED MARCH 09, 2016**

In these consolidated appeals, E.W.S. (Father) appeals from (1) the decrees that terminated his parental rights to his children C.W.S. (born in 2009), R.B.S. (born in 2012), and H.M.S. (born in 2013) (Children, collectively);[1] and (2) the orders that effectuated goal changes for Children from reunification to adoption.  We affirm.

---

[1] The decrees also terminated the parental rights of T.E.C., the biological mother of Children.

*Retired Senior Judge assigned to the Superior Court.

The York County Office of Children, Youth, and Families (CYF) became involved with Father and Children in December of 2013, following allegations of abuse, neglect, and substance abuse. N.T., 9/1/2015, at 68. An application for emergency protective custody was filed and granted in March 2014. *Id.* Five family service plans were given to Father between March 2014 and August 2015. *Id.* at 69-70. During that time, Father was incarcerated on three separate occasions, *id.* at 72; never obtained stable employment or housing, *id.* at 74-76, 78; failed to attend a psychological evaluation, *id.* at 105; did not follow through with counseling, *id.* at 104; and declined to complete a drug and alcohol evaluation despite his huffing and use of synthetic marijuana being "an ongoing concern since the agency initially became involved." *Id.* Although Father regularly attended visits with Children when he was not incarcerated, he never progressed past supervised visits. *Id.* at 69, 87.

On May 13, 2015, CYF filed petitions to terminate Father's parental rights involuntarily based upon several subsections of 23 Pa.C.S. § 2511(a), as well as § 2511(b). The orphans' court held a hearing on the petitions on September 1, 2015. At that point, Children had been in placement for 18 months, had been living together with the same foster family for approximately one year, and had not seen father in six months. CYF presented evidence that Father still was no closer to being in a position to

take custody of Children than he had been at the time of the initial placement. N.T., 9/1/2015, at 108, 122. Indeed, Father acknowledged at the hearing that the best case scenario was that he would be able to care for Children "by next year, the end of next year." *Id.* at 173.

On October 2, 2015, the court entered orders changing each child's goal from reunification to adoption, as well as decrees terminating Father's parental rights to each child. Father timely filed notices of appeal from each order and decree, along with concise statements of the errors complained of on appeal.

Father presents this Court with a single question:

Whether the trial court erred in applying the test contained in *In re Adoption of S.P.*, [47 A.3d 817 (Pa. 2012),] in terminating the parental rights of Father and changing the goal to adoption from reunification when Father had utilized all available resources to maintain his relationship with [Children] during his incarceration, and his incarceration will conclude in a time frame that would allow him to parent his [Children].

Father's Brief at 5 (unnecessary capitalization omitted).

We consider Father's question mindful of the following.

In cases involving the termination of a parent's rights, our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child.

Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand…. We must employ a broad, comprehensive

- 3 -

review of the record in order to determine whether the trial court's decision is supported by competent evidence.

***In re C.W.U., Jr.***, 33 A.3d 1, 4 (Pa. Super. 2011) (internal quotations and citations omitted).

Here, the orphans' court determined that CYF met its burdens under subsections (a)(1), (a)(2), (a)(5), and (a)(8) of 23 Pa.C.S. § 2511, as well as its subsection (b) burden. Those portions of the governing statute provide as follows.

> **(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
> >
> > * * *
> >
> > (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to

the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1) … or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Father presents this Court with the question of whether the orphans' court erred in its consideration of Father's incarceration in determining that CYF met its burden of proof. Father maintains that the circumstances of this case warrant the opposite conclusion under the law enunciated by our Supreme Court in *In re Adoption of S.P.* Therein, the Court held as follows:

> [I]ncarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2).

*In re Adoption of S.P.*, 47 A.3d at 830. Because his incarceration is of a short duration, and because he attempted to maintain his relationship with Children, Father claims that the fact of his incarceration cannot establish his failure or refusal to parent or to remedy conditions which led to placement. Father's Brief at 17-18.

However, because we agree with the orphans' court's determination that CYF met its burden under subsection (a)(8), we need not consider Father's incarceration-related argument. *In re I.E.P.*, 87 A.3d 340, 344 (Pa. Super. 2014) ("This Court must agree with only one subsection of [] 2511(a), in addition to subsection 2511(b), in order to affirm the termination of parental rights.").

Unlike the requirements of subsection (a)(2) at issue in *In re Adoption of S.P.*, or of subsections (a)(1) and (a)(5), the reasons for Children remaining in placement and Father's ability or willingness to resume parental duties at some future time are irrelevant under subsection (a)(8). Section 2511(a)(8) represents the determination that "a parent's basic

- 6 -

constitutional right to the custody and rearing of his … child is converted, upon the failure to fulfill … parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In the Interest of K.Z.S.*, 946 A.2d 753, 759-60 (Pa. Super. 2008) (quoting *In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004)).

> By allowing for termination when the conditions that led to removal of the child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.

*In re C.L.G.*, 956 A.2d 999, 1005 (Pa. Super. 2008) (*en banc*).

The only questions under subsection (a)(8) are whether (1) Children have been in placement for a year or more, (2) the conditions which led to placement still exist, and (3) termination of Father's parental rights will best serve Children. Father concedes that CYF proved that Children were in placement more than one year and that the conditions which led to the placement continued to exist. Father's Brief at 18. Father's argument to this Court concerns only whether terminating his rights will best serve the interest of Children.[2]

---

[2] This Court has noted that the analysis of Children's needs and welfare under subsection (a)(8) is distinct from its subsection (b) evaluation of the needs and welfare of Children. *In re Adoption of C.L.G.*, 956 A.2d at 1008–09. However, Father's brief does not address the needs-and-welfare

"Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child." **K.Z.S.**, 946 A.2d at 760 (quoting **In re C.P.**, 901 A.2d 516, 520 (Pa. Super. 2006)).

> The court should also consider the importance of continuity of relationships to the child…. The court must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. Most importantly, adequate consideration must be given to the needs and welfare of the child.

**Id.** (internal citations omitted). "The extent of the bond-effect analysis necessarily depends upon the unique facts and circumstances of the particular case." **In re K.M.**, 53 A.3d 781, 791 (Pa. Super. 2012).

Father fails to direct this Court to any evidence of record that severance of his ties with Children will destroy a necessary and beneficial relationship. Instead, Father blames any dearth of a bond with Children on the domestic relations court for incarcerating him and for giving "little review" of Father's two requests for prison visits. Father's Brief at 21. Father claims that CYF failed to meet a burden of proving that Children "do

---

question separately for subsections (a) and (b). Father's Brief at 17-20. Because the same testimony and considerations are applicable to both analyses, we likewise address the needs and welfare of Children only once. **See**, **e.g.**, **In re I.E.P.**, 87 A.3d at 352 (affirming the subsection (b) determination by stating "Likewise, we conclude that the totality of the record evidence supports the court's decision that terminating Father's parental rights would serve the developmental, physical, and emotional needs and welfare of Children pursuant to § 2511(b)" after conducting the subsection (a)(8) analysis of the needs and welfare of the children).

not have a bond with Father." *Id.* Father posits that "[i]t would be hard to believe that there would not be a detrimental impact on at least the oldest child if Father's rights were terminated." *Id.* at 23.

First, we note that subsection (a)(8) "does not require an evaluation of the remedial efforts of either the parent or [CYF]." *In re I.E.P.*, 87 A.3d at 346. Thus, we do not evaluate the actions Father took to maintain his bond with Children or his complaints that more should have been done to help him do so. At this point, we focus only upon the status of the bond at the time of the hearing.

Further, contrary to Father's argument, CYF's burden was not to prove that Children had **no** bond with Father; instead, CYF had to present evidence concerning "the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). The orphans' court then had to decide whether severing ties with Father was in Children's best interests despite any bond with Father.

The orphans' court offered the following analysis in this regard:

> The [c]ourt has thoroughly evaluated [Children's] relationships in this matter. The [c]ourt finds that [Children] have some level of bond with Father. However, [Children] have not seen Father since his incarceration. … The [c]ourt also finds that the bond between [Children] and foster parents is strong and healthy. Testimony established that [Children] are happy and feel comfortable in their care. [Children] know who their

Mother and Father are but it is the foster parents who take care of their daily needs and act as [Children's] parental figures. The bond that [Children] have with the foster family can provide safety, security and permanency for [Children]. Termination of parental rights will best meet the needs of [Children] and permit [Children] to achieve the stability that they deserve.

Orphans' Court Opinion, 10/2/2015, at 15.

The factual determinations of the orphans court are supported by the record. As discussed above, the evidence showed that Children had not received parental care from Father in 18 months, and had not even seen Father in six months; with Children at ages 6, 3, and 2, that is a substantial portion of their lives. Children have been together with the same foster family for more than a year. N.T., 9/1/2015, at 94-95. They refer to foster parents as "mother and father." *Id.* at 95. At the time of the hearing, Children were more strongly bonded with their foster parents than with Father. *Id.* at 97. In particular, H.M.S., the youngest, "flourished and made great improvements" once she was placed with the foster family. *Id.* at 116. Even the eldest child, C.W.S., is "very bonded with the foster parents" and "definitely sees them as parental figures who provide for his needs...." *Id.* at 98.

Regarding the impact of severing Father's ties with Children, the CYF caseworker who observed Children with Father and with the foster parents testified that H.M.S. "wouldn't know any different" if Father's rights were

terminated. *Id.* at 120. R.B.S. "would notice not going for visits but would easily adjust." *Id.* Although the caseworker opined that it might be "rough for [C.W.S.] at first," she indicated that in the end there would be no negative impact: "given the consistency that [termination] would allow and the stability, he would improve long term." *Id.*

"While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (citation and internal quotation marks omitted). "[T]he trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id.* (citation and internal quotation marks omitted).

The record demonstrates that Children have been in a safe and stable environment with foster parents for a year now. Even by Father's estimation, he will not be able to care for his children for another year. Children deserve better than what Father can offer. *See*, *e.g.*, *In re C.L.G.*, 956 A.2d at 1008 ("[I]f we were to permit Mother further opportunity to cultivate an environment where she can care for C.L.G., we would be subjecting a child, who has been waiting for more than two years for

permanency, to a state of proverbial limbo in anticipation of a scenario that is speculative at best.").

Under the circumstances of this case, we conclude that the orphans' court did not abuse its discretion in determining that the developmental, physical and emotional needs and welfare of Children is best served by terminating Father's parental rights and freeing Children for the permanency and stability of adoption.[3] *See*, *e.g.*, *In re T.D.*, 949 A.2d 910, 923 (Pa. Super. 2008) (affirming decision that termination of parental rights and freeing T.D. for adoption was in T.D.'s best interests despite testimony that severing T.D.'s bond with parents would be detrimental, where parents had demonstrated inability to provide parental care).

Decrees and orders affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2016

---

[3] Father's challenge to the goal changes for Children is contingent upon his prevailing on his challenge to the termination decrees. Father's Brief at 23 ("In turning next to the change of goal, if the agency has not proven by clear and convincing evidence that a termination of parental rights is in the best interests of [Children], then the primary goal should not be adoption."). Because we have held that the orphans' court properly terminated Father's parental rights, now adoption clearly is the appropriate goal for Children.