J-S58016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.T., FATHER | No. 638 MDA 2016 |

Appeal from the Order Entered March 15, 2016
In the Court of Common Pleas of Mifflin County
Orphans' Court at No(s): 28 OF 2015

| | |
|---|---|
| IN THE INTEREST OF: E.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.T., FATHER | No. 639 MDA 2016 |

Appeal from the Order Entered March 15, 2016
In the Court of Common Pleas of Mifflin County
Orphans' Court at No(s): 29 OF 2015

BEFORE:  GANTMAN, P.J., BOWES and PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 22, 2016**

J.T. ("Father") appeals from the March 15, 2016 orders granting the petitions filed by D.S. ("Mother") to involuntarily terminate his parental rights to his sons, A.T. and E.T.  We affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

Mother and Father married on February 29, 2012, and the family remained intact until November 5, 2013. While A.T.'s June 2011 birth preceded the marital union, E.T. was born of the marriage during July 2013. Following the parties' separation, Father sought employment in Texas for approximately one month before returning to Pennsylvania during December 2013. Upon Father's return, Mother secured a PFA order against him. While the grounds for the PFA order are not readily apparent from the certified record, it is undisputed that the two-year PFA expired in January 2016. Additionally, the order permitted Father to contact Mother to exercise physical custody of his sons or to discuss the children's wellbeing.

During March 2014, the parties entered a custody agreement that provided Father four hours of supervised partial physical custody on Sundays. The parties retained their former neighbors and mutual friends, David and Emily Hartzler, to supervise two of the custodial periods at the Hartzler's home in Lewistown, Pennsylvania. Father's fifteen-year-old son from a prior relationship was responsible for supervising the remaining custodial periods at Father's Mifflintown residence. Father exercised custody under the agreement only four times, and his last contact with the children occurred on Easter 2014.

Following the Easter visit, Father temporarily relocated to Florida, and after a brief return to Pennsylvania that summer, he moved to Massachusetts, where he presently resides with his current wife. During

these periods, Father communicated with Mother by telephone, email, and Facebook, but he neglected to request custody, speak with the children, or send letters, cards, or gifts. Eventually, Mother began systematically blocking Father's telephone numbers, and she terminated contact with him consistent with her interpretation of the PFA order.

As the PFA order permitted Father to communicate with Mother in order to discuss the children, Mother's reliance upon the order to support her actions was misguided. Nevertheless, Father did not employ reasonable efforts to circumvent the barriers that Mother erected to impede him from contacting the children. Indeed, beyond reaching out to Mother by telephone, email and social media, all of which she ignored, Father's only other endeavor was to contact Mother's family and the Hartzlers to help him locate her. These efforts were ineffective, and rather than contacting Mother's attorney or retaining a lawyer to help him exercise his custodial rights, Father simply succumbed to Mother's impediments. Indeed, in the year preceding Mother's petitions to terminate Father's parental rights, Father communicated with Mother on only three occasions: an email, a voice mail, and a telephone call, and while he inquired about his sons' welfare and indicated that "it would be nice to" receive a phone call, he neglected to request custody or ask to speak with the children. N.T., 2/8/16, at 10.

Mother remarried during May 2015. The children refer to Mother's husband, who is the proposed adoptive father, as "daddy," and recognize

him as their father. *Id*. at 15. Father acknowledges that the children are in a "good place" with Mother and her husband. *Id*. at 60.

On October 27, 2015, Mother filed the underlying petitions for the involuntary termination of Father's parental rights to A.T. and E.T. pursuant to 23 Pa.C.S. § 2511(a)(1) and (b). Following a hearing, the orphans' court terminated Father's parental rights to the children. When the hearing occurred, A.T. was four months from his fifth birthday and E.T. was approximately two and one-half years old. Neither child had seen Father since Easter 2014. This timely appeal ensued. Father complied with Pa.R.A.P. 1925(a)(2)(i) by filing a concise statement of errors complained of on appeal simultaneously with his notice of appeal.

Father raises two issues for our review:

1.    Whether the trial court erred in failing to consider uncontradicted evidence that Mother prevented Father from maintaining a relationship with the children?

2.    Whether the trial court erred in determining [that] termination [of parental rights] was in the children's best interest when there was evidence that[,] with more regular contact with Father and/or the engagements of family therapy, the attachment/bonding issues testified to could positively resolve itself within a reasonable time frame?

Father's brief at 4.

We review the orphans' court's order to grant or deny a petition to involuntarily terminate parental rights for an abuse of discretion. *In re C.W.U., Jr.*, 33 A.3d 1, 4 (Pa.Super. 2011). "We are limited to determining

whether the decision of the trial court is supported by competent evidence." *In re R.L.T.M.*, 860 A.2d 190, 191 (Pa.Super. 2004) (quoting *In re C.S.*, 761 A.2d 1197, 1199 (Pa.Super. 2000)). However, "[w]e must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence." *In re C.W.U., Jr.*, *supra* at 4. As the ultimate trier of fact, the trial court is empowered to make all determinations of credibility, resolve conflicts in the evidence, and believe all, part, or none of the evidence presented. *In re A.S.*, 11 A.3d 473, 477 (Pa.Super. 2010). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *Id*.

The party petitioning for termination of parental rights "must prove the statutory criteria for that termination by at least clear and convincing evidence." *In re T.R.,* 465 A.2d 642, 644 (Pa. 1983). Clear and convincing evidence is defined as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Matter of Sylvester*, 555 A.2d 1202, 1203–04 (Pa. 1989).

Requests to involuntarily terminate a biological parent's parental rights are governed by 23 Pa.C.S. § 2511, which provides in pertinent part as follows:

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . . .

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

The test for terminating parental rights consists of two parts. In *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007), we explained:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

- 6 -

Herein, the certified record supports the orphans' court's determination that Mother established the statutory grounds to terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b). As it relates to §2511(a)(1), the pertinent inquiry for our review follows:

> To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. . . . Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

*In re D.J.S.*, 737 A.2d 283, 285 (Pa.Super. 1999) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)) (internal citations omitted).

In *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super. 2003), we explained, "A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise 'reasonable firmness' in resisting obstacles placed in the path of maintaining the parent-child relationship." Moreover, once evidence establishes a parent's failure to perform parental duties, the trial court must consider, *inter alia*, the parent's

explanation for his conduct. *Matter of Adoption of Charles E.D.M., II, supra*.

Father's first argument concedes that Mother established the predicate elements of § 2511(a)(1) insofar as she proved that, for at least six months prior to the date she filed her petitions, Father failed to perform any of his parental duties to A.T. and E.T. However, focusing upon the remaining inquiry, Father complains that the orphans' court failed to consider his explanation for his parental inaction. Specifically, he maintains that Mother erected barriers designed to impede his communication with his two sons.

Father asserts that he regularly attempted to contact Mother and arrange visits with the children but that his attempts were futile. He highlights Mother's testimony that, pursuant to her interpretation of the PFA order, she habitually withheld her address from him and blocked the telephone numbers that she associated with him and his extended family members. Furthermore, he contends that when he was able to circumvent Mother's obstructions and leave voicemail messages, send emails, and attempt to contact her through Facebook, Mother still ignored his communications. In addition, Father asserts that he contacted Mother's family and the Hartzlers to help him locate his children, but neither were particularly helpful. Father testified that Mother's family advised him that

they did not want to get embroiled in the custody dispute and that the Hartzlers informed him that they had lost contact with Mother.[1] In sum, Father maintains that his struggle to contact Mother and the children was substantial, and he implies that, but for the impediments that Mother erected, he would have had free and regular access to perform his parental duties.

As it relates to the needs-and-welfare analysis pursuant to § 2511(b), Father acknowledges the absence of any meaningful relationship with A.T. and E.T. Indeed, he exercised four, four-hour custodial periods prior to Easter 2014 and has not established contact with them since. However, noting his love for the boys and his desire to reunite with them, Father argues that, with regular contact and family therapy, he would be able to fashion parental bonds with his sons. Hence, he concludes that terminating his parental rights was not in the best interest of the children.

Father's arguments are unpersuasive. Stated plainly, Father failed to use all available resources or exercise reasonable firmness to overcome the impediments to maintaining a relationship with A.T. and E.T. Father neglected to contact an attorney to help him pursue his custody rights, and

---

[1] Father's position disregards the inconvenient facts that Mr. Hartzler not only testified that he never refused to facilitate Father's physical custody of the boys, but he also attested that Father had not contacted him within the past year seeking to exercise his custody rights. *See* N.T., 2/8/16, 29-31.

he failed to utilize known contacts in Mother's family to send the children gifts, cards, or financial assistance. Instead, he relied on Mother's elusiveness as an excuse for his continued inaction and his failure to perform his parental duties. Also, while there is no parent-child bond between Father and his sons, such a bond exists among Mother's husband and the boys. Thus, we do not disturb the orphans' court's conclusion that terminating Father's parental rights serves the boys' developmental, physical and emotional needs and welfare. Accordingly, we affirm the orders terminating Father's parental rights pursuant to § 2511(a)(1) and (b).

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2016