In re C.W.U., JR., a Minor, Appellant.

In re C.W.U., Jr., a Minor, Appellant.

In re C.W.U., Jr., a Minor.

**Appeal of Allegheny County Children Youth and Families.**

Superior Court of Pennsylvania.

Argued May 17, 2011.

Filed Aug. 30, 2011.

Karen E. Koskoff, Pittsburgh, for C.W.U.

Barbara A. Hanley, Pittsburgh, for Allegheny County Children Youth and Families.

Raymond N. Sanchas, Pittsburgh, for C.M.W., participating party.

BEFORE: MUSMANNO, BOWES and FITZGERALD*, JJ.

* Former Justice specially assigned to the Superior Court.

OPINION BY MUSMANNO, J.:

C.W.U., Jr. ("Child"), by his guardian *ad litem* ("GAL"), and the Allegheny County Office of Children, Youth and Families ("CYF") appeal from the December 10, 2010 Orders denying the Petitions to terminate the parental rights of Child's father, C.W.U., Sr. ("Father"), and mother, C.M.W. ("Mother").[1] We affirm the Decree denying the termination of Mother's parental rights. We reverse the Decree denying the termination of Father's parental rights.

The trial court explained the factual background and procedural history underlying the instant appeals as follows:

> Child was born [in April 2007]. Starting in May 2007, various reports were made to [CYF] regarding the Child. In each instance, an assessment was made. On March 27, 2009, the Court ... signed an Emergency Custody Authorization ["ECA"]. The ECA alleged that the Child had been placed in a foster home in Ohio following Mother's and Father's arrests there. On March 30, 2009, a shelter hearing occurred. [Child] was ordered to remain in [a CYF] foster home, with supervised visits for the parents. On May 1, 2009, [Child] was adjudicated dependent under 42 Pa.C.S.A. § 6302(1). The May 1, 2009 Dependency Disposition Order directed: that [Child] remain in foster care; that Mother and Father participate in mental health evaluations, drug and alcohol evaluations, domestic violence counseling, and dual diagnosis programs, among other requirements; and that Mother

and Father have separate supervised visitation with [Child].

> At an August 11, 2009 permanency review hearing, the Court (per Hearing Officer James Alter, Esquire) found Mother and Father had made moderate progress in their compliance with the permanency plan. At a December 8, 2009 review hearing, the hearing officer found that Mother had continued to make moderate progress while Father had made minimal progress. At an April 23, 2010 review hearing, the hearing officer found Mother had made substantial progress toward her Family Service Plan goals, while Father had made minimal progress. At a July 13, 2010 review hearing, Mother was found to have made moderate progress, while Father was found to have had no involvement. The hearing officer found that Mother had not undergone urine screens, but that she was involved with the Women's Center and was participating in domestic violence counseling. At that same hearing, [CYF] reported its intention to file for termination of parental rights. At an October 8, 2010 review hearing before [the trial court, the court] found minimal compliance by Mother and little involvement by Father.

Trial Court Opinion, 1/31/11, at 1–2.

On September 9, 2010, CYF filed a Petition seeking the involuntary termination of the parental rights of Mother and Father as to Child. On December 10, 2010, the trial court held an evidentiary hearing on the Petition. At the hearing, CYF presented the expert testimony of psychologist Neil Rosenblum, Ph.D., via telephone.

---

1. CYF also sought to terminate the parental rights of any unknown father of Child, as Mother had questioned Father's paternity in October 2009. *See* N.T., 12/10/10, at 41. On December 10, 2010, the trial court terminated the parental rights of an unknown father, since there was no proof of paternity in any man other than Father. *See id.* at 116; *see also* Trial Court Opinion, 1/31/11, at 1. No person contested the termination of the parental rights of an unknown father, and no other person is a party to this appeal.

CYF also presented the testimony of Allison Kroll, the CYF family services caseworker assigned to work with the family. Mother presented the testimony of Brandi Gurcak, who is a therapist at the Family Links treatment center in Pittsburgh, regarding Mother's involvement with Family Links as an inpatient. Mother also testified on her own behalf. While Father was represented by counsel at the hearing, he did not present any testimony or other evidence on his own behalf.

At the close of the hearing, the trial court found that the elements of section 2511(a)(5) and (8) of the Adoption Act were satisfied with regard to both Mother and Father, but that the elements of section 2511(b) were not satisfied with regard to either parent. Accordingly, on the finding that there was no clear and convincing evidence regarding the satisfaction of section 2511(b), the trial court denied the Petitions for termination of the parental rights as to each parent.

On January 7, 2011, the GAL filed two Notices of appeal, each accompanied by the required Concise Statements of Errors Complained of on Appeal. On January 10, 2011, CYF filed one Notice of appeal of the two termination Orders entered by the trial court, and a Concise Statement of Matters Complained of on Appeal.

On appeal, GAL presents the following claim for our review:

> Whether the trial court abused its discretion and/or erred as a matter of law when it found that CYF did not present clear and convincing evidence supporting the termination of Mother's and Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(b)?

GAL's Brief at 4.

CYF presents the following claims for our review:

I. Was the trial court's decision to deny termination of Mother's parental rights based on its conclusion that CYF failed to meet its burden of proof by clear and convincing evidence pursuant to 23 Pa.C.S.A. [§ ] 2511(b) an error of law, an abuse of discretion or predicated on capricious disbelief of competent and credible evidence?

II. Was the trial court's decision to deny termination of Father's parental rights because it had denied termination of Mother's parental rights an error of law, an abuse of discretion or predicated on capricious disbelief of competent and credible evidence?

CYF's Brief at 4.

■ In cases involving the termination of a parent's rights, "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child." *In re I.J.*, 972 A.2d 5, 8 (Pa.Super.2009) (citation omitted).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. . . . We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

\*　　\*　　\*

■ Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

\*　　\*　　\*

■■ The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue.... We may uphold a termination decision if any proper basis exists for the result reached.... If the court's findings are supported by competent evidence, we must affirm the court's decision, even is the record could support an opposite result.

*Id.* at 1115–16 (quotation marks and citations omitted).

In reviewing the trial court's denial of the termination of Mother's parental rights, we focus on section 2511(a)(8) and (b), which provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

■ "[T]o terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275–76 (Pa.Super.2003); *see also* 23 Pa.C.S.A. § 2511(a)(8). "Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super.2003). After the twelve-month period has been established, the court must next determine whether the conditions necessitating placement persist, despite the reasonable good faith efforts that the agency supplied over a realistic time period. *Id.* In terminating parental rights under section 2511(a)(8), the trial court is not required to evaluate a parent's current "willingness or ability to remedy the conditions that initially caused placement." *In re Adoption of T.B.B.*, 835 A.2d at 396; *In re Adoption of M.E.P.*, 825 A.2d at 1276.

■ With regard to the evidence in support of termination under section 2511(b), we consider whether the termination of parental rights would best serve

the developmental, physical and emotional needs and welfare of the child. *See In re C.M.S.*, 884 A.2d 1284, 1286–87 (Pa.Super.2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect of permanently severing that bond on the child. *See id.*

The GAL argues that the trial court properly found that subsections 2511(a)(5) and (8) were satisfied, but the court committed an abuse of discretion in finding that subsection (b) was not satisfied. The GAL asserts that Child was removed from his parents' home in March 2009. The GAL claims that Child has not been returned to his parents' care, and that he has been in the care of his pre-adoptive foster mother for nineteen months. According to GAL, the evidence demonstrated that Mother and Father are not capable of parenting Child. The GAL contends that the trial court should have credited the uncontested testimony of Dr. Rosenblum regarding the loving bond and relationship that Child has with his pre-adoptive foster mother. Accordingly, the GAL asks that this Court reverse the trial court's denial of the termination Petition as to both parents, and find that the termination of the parental rights of Mother and Father meets Child's needs and welfare.

In its brief, CYF argues that the trial court abused its discretion when the court concluded that CYF failed to establish that the termination of the parental rights of Mother and Father would meet the needs and welfare of Child, pursuant to section 2511(b). CYF points out the trial court's finding that CYF satisfied its burden of proof pursuant to section 2511(a)(5) and (8). According to CYF, those subsections include an element that the termination of

parental rights would best serve the needs and welfare of the child in question. CYF contends that the trial court improperly based its decision with regard to Father on the fact that it did not terminate Mother's parental rights. CYF urges that the trial court should have separately considered the matters.

Alternatively, CYF argues that if the matters are inseparable, the trial court abused its discretion by failing to terminate the parental rights of both Mother and Father. CYF claims that it satisfied its burden of proof as to Father, since he did not appear at the termination hearing, did not present any evidence, and is not participating in the present appeal. CYF also contends that it satisfied its burden of proving that Mother's parental rights should be terminated pursuant to section 2511(b).

■ Here, GAL and CYF focus their arguments upon whether the trial court erred in finding that the evidence did not support the termination of Mother's parental rights under section 2511(b). Regarding the evidence in support of termination of Mother's parental rights under section 2511(b), the trial court stated the following:

> Dr. Rosenblum testified that the Child is attached to both Mother and Father. He also testified that there were no concerns during the interaction visit between Mother and Child[,] and that Mother enjoys Child and is appropriate with Child. Child also responded well to Mother and enjoys a good relationship with Mother. Dr. Rosenblum found that Father also was appropriate with Child during the interaction visit and that Child was happy with Father. Further, Dr. Rosenblum opined that Child would be sad and disappointed if he was unable to continue visits with Mother, although Dr. Rosenblum did not anticipate a day-

to-day impact on Child. Despite the bond between Child and his parents, Dr. Rosenblum expressed concern about the abilities of Mother and Father to serve as day-to-day parents.

Dr. Rosenblum's report also shows that Mother and Child have a good relationship. Child was "very glad" to see Mother, running to her and hugging her. Mother displayed patience with Child, as well as "a very gentle, nurturing style of relating to [Child]." Dr. Rosenblum found that Child "responds very well to [Mother], with whom he enjoys a comfortable relationship and attachment. While Dr. Rosenblum ultimately concluded that adoption was in Child's interests, his report was written prior to Mother making substantial efforts to change her situation. For example, Mother entered a residential treatment center where she was in group and individual therapy, as well as attending NA and AA meetings. Mother had started treatment with a psychiatrist and was taking medication regularly to address her mental health concerns.

Additionally, caseworker Alison Kroll [sic] testified that Mother had attended Child's medical appointments while he has been in care. Mother testified that Child calls her "mommy" and is excited to see and spend time with Mother. Mother also testified to her belief that terminating the bond between her and Child would be detrimental to Child. This [c]ourt found and concluded that the case was "very, very" challenging and that "reasonable people, even reasonable judges, could disagree." How-

ever, given the testimony and evidence, it was clear to this [c]ourt that Child is bonded with Mother. Child loves Mother and feels loved by her. It also was clear that Mother provides comfort to Child. This [c]ourt determined that the strength of the bond meant that to sever it by terminating Mother's parental rights would be detrimental to Child.
Trial Court Opinion, 1/31/11, at 6–7 (citations omitted).[2]

Regarding Child's emotional attachments to Mother and Father, Dr. Rosenblum testified as follows:

> [Child], has a meaningful relationship with both parents but we have to be careful. He's not accustomed to seeing his dad very often at all. So I don't believe that not seeing him would have a major impact on him. I think that he would be sad and be somewhat disappointed if he couldn't see his mother, although I believe that there is an expectation that if he were adopted by his current caregiver that she would allow visitation. So I don't think that adoption would cut off those relationships.

> I think [Child] has already dealt with the major issue of being separated from his parents and I think he accepts that. If he didn't see his mother I think there would be some sadness and loss that he'd have to work through. While he enjoys his dad, his dad has not been available to him very much, so I don't think it would impact him on a day-to-day basis.

N.T., 12/10/10, at 21–22.

The trial court explained why it disagreed with Dr. Rosenblum's conclusions

**2.** As to the third element of section 2511(a)(8), the trial court was not specific in its statement at the close of the hearing or in its opinion as to the evidence from which it concluded that the needs and welfare of Child would best be served. Since the question before us is whether the trial court abused its discretion in *denying* CYF's Petition to terminate Mother's parental rights, however, this shortcoming is of no moment. The trial court's basis for its denial was the lack of sufficient evidence to support the termination under subsection (b).

regarding the needs and interests analysis in relation to Mother as follows.

> Dr. Rosenblum opined that Mother would need to be drug-free for a year before reunification should be considered and that Mother had been unable to change her behavior. This [c]ourt, however, found Mother credible in her efforts to change her behavior. Mother has met many of her FSP goals and continues to work on others. This [c]ourt also found Mother credible in her claim that she wants a better life for the sake of Child and for the sake of Mother's own health, and in her claim that she is finding ways to deal with the temptation to relapse. Given Mother's credibility and Dr. Rosenblum's findings regarding the bond between Mother and Child, this [c]ourt found that termination of Mother's parental rights did not serve Child's needs and interests at this time.

Trial Court Opinion, 1/31/11, at 8–9 (citations omitted).

With regard to the evidence in support of termination of Father's parental rights under section 2511(b), the trial court stated the following:

> Dr. Rosenblum also testified that Child has an attachment to Father. Dr. Rosenblum's report indicated that Child was "very excited" to see Father, that Child "immediately ran" to Father, and that Child "gave him a nice hug." Child also calls Father "daddy." Dr. Rosenblum found that Child still had an emotional attachment to Father. Father was "appropriate," "comfortable and active with [Child]," and "pleasant and comfortable in relating to his son."
>
> Without question, Father has been a less active participant in Child's life than Mother, and has had less success in meeting his FSP goals. Despite that, Child maintains a bond with Father. Certainly, Father presented a closer

case under 23 Pa.C.S.A. § 2511(b). This [c]ourt considered Child's bond with Father and the detriment to Child in the event that this bond is severed. This [c]ourt also considered that, since it was not terminating Mother's parental rights, if Father's parental rights were terminated, Child would be left with no legal father. The [c]ourt considered that, in that eventuality, Child would lose a potential source of both emotional and financial support. While this [c]ourt had doubts about Father's ability to provide that support, it found that there was not clear and convincing evidence that it was in Child's best interests to terminate Father's parental rights, leaving Child with no legal father and no prospect of an adoptive one. There was no evidence that making Child an orphan on Father's side would advance Child's welfare. This [c]ourt said it "[did] not believe that clear and convincing evidence had been established that the welfare [and] needs of the child will be served by terminating Father's rights within the context of the fact that the [c]ourt has elected not to terminate Mother's rights." This ruling did not make Father's parental rights dependent on Mother's. Rather, as required by the governing statute, this [c]ourt took into consideration the totality of the circumstances when performing the needs and interests analysis.

Trial Court Opinion, 1/31/11, at 7–8 (citations omitted).

Here, the GAL devotes a significant portion of its brief to recounting the testimony of the witnesses, and seeking for this Court to make a different assessment of that testimony than that made by the trial court. Our Supreme Court has recently stressed that, if this Court would have reached a different conclusion on the record of a case, we may not re-weigh the evidence and the credibility determinations of the trial court. *See In the Interest of*

*R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). Thus, mindful of our Supreme Court's instructions in *R.J.T.* and this Court's instructions in *In re Z.P.*, 994 A.2d 1108 (Pa.Super. 2010), we must defer to the trial judge who saw and heard the testimony of each witness and determined the credibility to place on the witnesses. Because there is competent evidence of record to support the trial court's decision as to Mother, we affirm the trial court's decision to deny the Petition to terminate Mother's parental rights.[3]

█ Unlike Mother, Father did not testify at the hearing on the termination Petition, nor did his counsel present any evidence on his behalf. The evidence presented by CYF at trial, through Dr. Rosenblum's testimony, was that Father has not been available to Child, and that the termination of Father's parental rights would not have an impact on Child. In fact, the trial court found that Father had little involvement or bond with Child.

The trial court conceded that it refused to terminate Father's parental rights because the court did not wish to leave Child without a father, in light of the fact that it was not terminating Mother's parental rights at this time. It is apparent that the trial court treated the termination Petitions regarding Father and Mother as inextricably intertwined. The trial court gave much weight to the fact that there was no pre-adoptive father. Apparently, the trial court afforded little weight to the testimony of Dr. Rosenblum that Child has a good bond with the foster mother. *See* N.T., 12/10/10, at 14 (wherein Dr. Rosenblum testified that Child had lived with his foster mother for fifteen months at the time of his evaluation, and that Child was comfortable with her and had stability in his life). Further, Dr. Rosenblum found that Child was secure with his foster mother, and that he was receiving all of the services and assistance that he needs. *Id.*

After a careful review of the record in this matter, we find that there was no competent evidence to support the trial court's decision that the termination of Father's parental rights was not in Child's best interests. Thus, we hold that the trial court committed an abuse of its discretion in refusing to terminate Father's parental rights, and we reverse that decision. *Cf. In the Interest of R.J.T.*, 9 A.3d at 1190 (holding that, where the record supported the trial court's conclusion that the case was a very close call and supported the trial court's decision to deny CYF's goal change motion, there was no abuse of the trial court's discretion). Accordingly, we affirm the trial court's December 10, 2010 Order as to Mother, and we reverse the trial court's December 10, 2010 Order as to Father.

Order affirmed as to Mother; Order reversed as to Father.

---

**3.** In future proceedings, it may be beneficial for the parties to consider an open adoption as an option.