J-S83044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| In Re: A.L.K. a/k/a A.L.K.K., a/k/a A.K.K. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appeal of: B.K., mother | No. 1050 WDA 2016 |

Appeal from the Order May 11, 2016
in the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000013-2016

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED DECEMBER 16, 2016**

B.K. (Mother) appeals from the order entered May 11, 2016, which terminated involuntarily her parental rights to A.L.K. a/k/a A.L.K-K. a/k/a A.K.K. (Child).[1]  We affirm.

Mother is the biological mother of Child, born in January of 2013.  The Allegheny County Office of Children, Youth, and Families (CYF) initially became involved with Mother after reports of domestic violence and truancy with respect to an older child of Mother.  Child was removed from Mother's home in January of 2014 after Mother was arrested for driving while intoxicated and it was discovered that Mother had left Child without appropriate adult supervision.  Child was placed with her biological father (Father) who was living at that time with Child's paternal grandmother.  Father subsequently relapsed into substance abuse, and Child was

---

[1] The trial court signed this order on May 6, 2016, but it was entered on the docket on May 11, 2016. *See* Trial Court Opinion, 8/8/2016, at 2.

* Retired Senior Judge assigned to the Superior Court.

adjudicated dependent on December 17, 2014. On January 25, 2016, CYF filed petitions for terminating involuntarily the parental rights of both Mother and Father pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). A hearing was held on May 6, 2016, and the orphans' court granted CYF's petition as to Mother.[2]

Mother filed a notice of appeal as well as a concise statement of errors complained of on appeal.[3] The trial court filed an opinion on August 8, 2016.

On appeal, Mother sets forth two issues for our review.

> 1. Is the [orphans'] court's finding a grounds for involuntary termination of [Mother's] parental rights under 23 Pa.C.S.[] § 2511(a)(2), § 2511(a)(5) and § 2511(a)(8) proven by a showing of clear and convincing evidence?
>
> 2. Is the [orphans'] court's finding that termination of parental rights serves the developmental, physical and emotional needs and welfare of the Child as proved by clear and convincing evidence as required by 23 Pa.C.S.[] § 2511(b)?

Mother's Brief at 5 (unnecessary capitalization omitted).

---

[2] At the close of the hearing, Father consented to the termination of his parental rights to Child and to Child's adoption.

[3] Mother filed her first notice of appeal on June 16, 2016, more than 30 days after the order terminating her parental rights. Along with that notice of appeal, she filed a motion for leave to appeal *nunc pro tunc*. The docket does not show that Mother received notice of the entry of that order pursuant to Pa.R.C.P. 236(b). Accordingly, the appeal period did not begin to run, and her notice of appeal is considered to be timely filed. *See In re L.M.*, 923 A.2d 505, 509 (Pa. Super. 2007) (declining to quash appeal where "the docket does not show that notice of entry of the termination order was given to Mother" and "[t]herefore, Mother's appeal period was not triggered").

We consider these issues mindful of the following.

> In cases involving the termination of a parent's rights, our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child.
>
> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand …. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re C.W.U., Jr.*, 33 A.3d 1, 4 (Pa. Super. 2011) (quotation marks and citations omitted).

Our courts apply a two-part analysis in reviewing an order terminating parental rights. As we explained in *In re L.M.*,

> [i]nitially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

923 A.2d at 511.

Following our review of the certified record, the parties' briefs, and the relevant law, we conclude that the opinion of the Honorable Dwayne D. Woodruff thoroughly and correctly addresses and disposes of Mother's issues

- 3 -

and supporting arguments. Accordingly, we adopt the orphans' court's opinion, filed on August 8, 2016, as our own, and affirm the disposition of Mother's issues on the basis of that opinion. The parties shall attach the copy of the orphans' court's August 8, 2016 opinion, attached to this memorandum, in the event of further proceedings.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2016

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY COURT DIVISION

IN THE INTEREST OF: A.L.K
A/K/A A.L.K-K A/K/A A.K.K.,
A minor.

CHILDREN'S FAST TRACK APPEAL

Docket No. CP-02-AP-0000013-2016

Superior Court Docket No. 1010 WDA 2016
1050

APPEAL OF: B.K.

Natural Mother

**OPINION**

BY:

Honorable Dwayne D. Woodruff
440 Ross Street, Room 5065
Pittsburgh, PA 15219

COPIES TO:

MARY ELLEN McMEEKIN, ESQ
McMEEKIN & VOLOVICH
555 Grant Street, Ste 120
Pittsburgh, PA 15219

CYNTHIA B. MOORE, ESQ
Kidsvoice
700 Frick Building
437 Grant Street
Pittsburgh, PA 15219

GINA M. ZIADY. ESQ
ACBF Juvenile Court Project
436 Seventh Avenue
Koppers Building, 11th Floor
Pittsburgh, PA 15219

LILIAN ALEXA AKIN
CYF Adoption Legal Unit
445 Fort Pitt Blvd Ste 101
Pittsburgh, PA 15219

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY COURT DIVISION

IN THE INTEREST OF: A.L.K              CHILDREN'S FAST TRACK APPEAL
A/K/A A.L.K-K A/K/A A.K.K.,
A minor

Docket No. CP-02-AP-0000013-2016

Superior Court Doc. No. 1010 WDA 2016

APPEAL OF:  B.K.
             Natural Mother

## OPINION

WOODRUFF, J.                                     August 8, 2016

B.K. ("Mother") appeals from the Involuntary Termination of Parental Rights Order entered by this Court on May 6, 2016, terminating her parental rights to A.L.K. ("Child") pursuant to the Adoption Act, 23 Pa.C.S.A. 2511.

The relevant facts and procedural history are as follows: Child was born in January, 2013 to B.K. ("Mother"). On January 27, 2014, the Allegheny County Office of Children, Youth, and Families ("CYF") – which had previously been involved with Child's family after reports of domestic violence and truancy of an older sibling – removed Child from Mother's home. N.T., 6/6/16, at 6-8. The January 27, 2014 removal of Child from Mother's home occurred after reports that Mother had been arrested for driving under the influence, and had additionally left Child at home in the care of an older sibling, without appropriate adult supervision. *Id.*

2

Following Child's removal from Mother's home, Child was placed with her biological father ("Father") who was residing in the home of Child's paternal grandmother. *Id.* at 9-10. This Court granted Mother supervised visitation. *Id.* On October 23, 2014, CYF filed a dependency petition after receiving reports that Father, who had previously suffered substance abuse problems, had relapsed. *Id.* at 8-9. On November 12, 2014, Child was removed from the care of her parents, and adjudicated dependent on December 17, 2014. *Id.* at 11. CYF filed a Petition for Termination of the Parental Rights of Mother and Father (TPR) on January 25, 2016. This Court conducted a hearing on the TPR petition on May 6, 2016, and that same day entered an order terminating the parental rights of Mother and Father.

On June 16, 2016, Mother filed a Motion for Leave to file Appeal Nunc Pro Tunc, which the Pennsylvania Superior Court docketed at 1010 WDA 2016. CYF filed an Application to Dismiss or Quash Appeal, which the Superior Court denied on July 14, 2016. That same day the Superior Court designated the case as a Children's Fast Track Appeal, and assigned a docket number of 1010 WDA 2016.

On July 21, 2016, Mother filed a Children's Fast Track Notice of Appeal, docketed by the Superior Court at 1050 WDA 2016. That same day, Mother filed a Concise Statement of Errors Complained of on appeal pursuant to Pa.R.A.P. 1925(b). The record indicates that Mother filed an additional Notice of Appeal on July 25, 2016.

On appeal, Mother raises the following issues for review:

1.    The Trial Court erred in finding that the Petitioner had proved grounds for Termination under [23] Pa.C.S.A.§ 2511(a)(2),(5) and (8).

2.    The Trial Court erred in finding that the Petitioner had proved by clear and convincing evidence that the conditions which led to the removal of the child had not or could not be remedied within a reasonable period of time.

3

3. The Trial Court erred in finding that the Petitioner had proved by clear and convincing evidence that Termination of the Natural Mother's Parental Rights would best serve the development, physical and emotional needs and welfare of the child as required by [23] Pa.C.S.A. § 2511(b).

Concise Statement of Errors Complained of on Appeal.

Termination of parental rights is governed by section 2511 of the Adoption Act.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.
*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S.A. § 2511).
The burden is on the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid.
*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

*In re I.E.P.*, 87 A.3d 340, 344 (Pa. Super. 2014). The appellate court must agree with only one subsection of 23 Pa.C.S.A. § 2511(a), in addition to subsection 2511(b), in order to affirm the termination of parental rights. *Id.* (citations omitted).

On appeal, Mother asserts that this Court erred in finding that (i) CYF had proved grounds for termination under 23 Pa.C.S.A. 2511(a)(2)(5) and (8); (ii) that the conditions which led to the removal of the child had not or could not be remedied within a reasonable period of time; and (iii) that Petitioner had proved by clear and convincing evidence that the termination of the Mother parental rights would best serve the developmental, physical and emotional needs and welfare of the child as required under Pa.C.S.A. Section 2511(b).

23 Pa.C.S.A. § 2511(a)(2),(5) and (8) and § 2511(b) provide as follows:

4

§ 2511. Grounds for involuntary termination

**(a)**    **General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

...

**(2)**    The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

...

**(5)**    The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

...

**(8)**    The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

**(b)**    **Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

5

23 Pa.C.S.A. § 2511.

A review of the record and testimony provides clear and convincing evidence that termination was warranted under 23 Pa.C.S.A. §§ 2511 (a)(2), (a)(5), and (a)(8) as to Mother, and that termination of Mother's parental rights would best serve the physical and emotional needs and welfare of the child pursuant to §2511(b).[1] At the May 6, 2016 hearing on CYF's Petition for Involuntary Termination, CYF presented the credible testimony that Mother suffers ongoing difficulties with substance abuse and homelessness, and has repeatedly been unable to demonstrate that she can provide Child with a stable and secure home environment. April Rosenberger, a CYF caseworker, testified credibly at the TPR hearing that in October 2, 2013 CYF received reports that Mother suffered drug and alcohol abuse and was intermittently homeless. N.T., 5/6/16, at 7. Accordingly, and following admissions by Mother to a history of substance abuse, CYF instituted a safety plan, which included a provision that Mother would not leave Child without appropriate adult supervision. *Id.* at 8. Thereafter, however, CYF became aware that Mother had left Child in the care of an older sibling, without adult supervision, after which CYF removed Child from Mother's care, and placed Child with Father, who had recently been released from a substance abuse rehabilitation program. *Id.* at 8-9.

Mother was instructed to undergo drug testing, attend a "detox" program to achieve sobriety, and participate in weekly random urine screens after Mother admitted to an opiate dependency and tested positive in urine screens for controlled substances. *Id.* at 9-10; 12-13. This Court granted Mother supervised visitation with Child, and CYF instituted a family plan for Mother, with the goal of having Child returned to her care. *Id.* at 9-10; 12-13. In addition, Mother was instructed to secure housing, having been evicted from the home of relatives with

---

[1] Mother does not contest that the Child has been out of her care for the statutorily requisite time frame.

6

whom she was residing. *Id.* at 14. To assist Mother in achieving these goals, CYF provided her with information about mental health and drug and alcohol treatment providers, and referred her to the Urban League in 2015 for assistance in obtaining housing. *Id.* at 14-15, 33. However, while Mother did initially attended a drug and alcohol treatment program at A and R services in 2014, after initially granting CYF permission to obtain her urine screens, Mother subsequently refused to provide CYF access to that information, thus precluding CYF from monitoring her compliance with her drug and alcohol treatment. *Id.* at 16.

On October 23, 2014, CYF filed a dependency petition after reports of domestic violence between Mother and Father, reports that Father had relapsed, and in light of the fact that Mother, who stated that she was undergoing substance abuse treatment, failed to provide CYF with records of her treatment. *Id.* at 10-11. On November 12, 2014, Child was removed from Father's home, and subsequently adjudicated dependent on December 17, 2014, following Mother's admissions to suffering from drug and alcohol abuse and a lack of housing. *Id.*

Following Child's removal from Father's home, CYF continued to monitor Mother's compliance with drug and alcohol treatment, during which time Mother indicated that she was attending drug and alcohol treatment programs, but failed to provide CYF with records of her participation. *Id.* at 16. After complaints by Mother that she lacked health insurance to obtain such drug and alcohol treatment, CYF accordingly provided Mother with information about public services through which she could obtain health insurance. *Id.* at 34. However Mother nevertheless failed to successfully complete a rehabilitation program. *Id* at 16-17, 34. Moreover, CYF presented testimony that Mother, in her interactions with CYF caseworkers, occasionally appeared to be under the influence of a controlled substance. April Rosenberger testified that in April, 2016, when she attended a meeting with Mother at maternal grandmother's

7

house, she observed that Mother's eyes were "dilated [and] glassed over" and that she "appeared to be under the influence of something." *Id.* at 17. In addition, April Rosenberger testified that in December, 2015, while transporting Mother from a psychological evaluation, she observed Mother "talking very fast" and "[not] making a lot of sense" and thereafter Mother "passed out in [the] passenger seat," and although Ms. Rosenberger "yelled her name a couple of times, [s]he did not answer" but remained limp and asleep for the remainder of the two-hour drive, and appeared to be under the influence of drugs or alcohol. *Id.* at 17-18. Ms. Rosenberger further testified that Mother did not attend all of her scheduled urine screens, that the ones she participated in did not indicate that she was living a substance-free lifestyle, and further that as of the date of the TPR hearing, Mother had failed to secure appropriate housing. *Id.* at 24. Ms. Rosenberger testified that in March, 2016, Mother did enroll in a drug and alcohol treatment program, which is the only treatment program that Mother has complied with. *Id.* at 23.

Moreover, Mother's efforts to maintain contact with Child have been irregular. Although Mother was granted visitation with Child in 2014, and initially visited Child regularly, since the summer of 2015, Mother has attend only approximately half of her scheduled visits with Child, who currently resides with her paternal grandmother. *Id.* at 25.

In its determination that termination of Mother's parental rights was warranted, this Court additionally considered the testimony of Dr. Bernstein, a licensed psychologist, who testified that Mother's inability to secure stable housing (having lived in six different homes within the preceding one year period), together with Mother's drug use, were detrimental to Child's wellbeing. *Id.* at 49, 57-58. Dr. Bernstein further testified that he observed paternal grandmother interact with Child, and stated that Child related to paternal grandmother in a positive manner, and that paternal grandmother and Child "enjoy a strong bond". *Id.* at 44-45;

8

CYS Exhibit 4 (Report of Eric Bernstein) at 4. He testified that paternal grandmother appeared attentive to Child and invested in Child's wellbeing. *Id.* Dr. Bernstein further testified that while Mother had a "history of instability," in contrast, he believed paternal grandmother displayed the capacity to provide Child with routine, structure, love and affection and support a positive family relationship and that "at [Child's] young age ... stability, consistency and [a] healthy environment is key [and] grandmother is clearly in the best position to continue meeting [Child's] needs." N.T., 5/6/16. at 57; CYS Exhibit 4 (Report of Eric Bernstein) at 13. Dr. Bernstein did testify, however, that in his observations of interactions between Mother and Child, Mother provided Child with affection, interacted positively with her, and that a bond existed between Mother and Child. *Id.* at 46-57, 62-63.

This Court additionally considered the testimony of Mother who confirmed that on May 6, 2016, the date of the TPR hearing, she was arrested on an outstanding warrant issued in Youngstown Ohio for drug possession, and further admitted to having additional drug charges pending against her. *Id.* at 69-70. Mother further admitted to her failure to attend scheduled visitations with Child, but asserted that she was precluded from doing so because of transportation difficulties. *Id.* at 72. She further testified that she had in the past been able to periodically secure housing for herself and Child, but acknowledged difficulty maintaining an appropriate residence. *Id.* at 74-75. Mother testified that, as of the date of the TPR hearing, she had received drug and alcohol and mental health services at Alpha House treatment center where she had been residing for thirty-seven days, and that she was making an effort to rehabilitate herself. *Id.* at 69, 78. However, Mother did acknowledge that she needed further treatment and rehabilitation in order to provide a stable home environment for Child. *Id.* Mother further reiterated that she received some drug and alcohol treatment following removal of Child from

9

her home, but that her previous attempts at rehabilitation and treatment had been unsuccessful, and that she was unable to secure further treatment in the past because she lacked health insurance. *Id*. at 77-78.

Following the TPR hearing, and based upon the foregoing testimony and evidence, this Court concluded that CYF demonstrated by clear and convincing evidence that the statutory grounds for termination had been met. The evidence and testimony established that Mother failed to secure stable housing, complete drug and alcohol treatment, and attend regular urine screens. Mother was offered drug and alcohol treatment options to assist in her rehabilitation, yet CYF was unable to obtain from Mother any documentation that she was attending treatment, and Mother herself conceded that her previous efforts at treatment had failed. Moreover, at the TPR hearing, Mother acknowledged suffering mental health problems, and admitted to a continuing need to rehabilitate herself in order to provide a secure and stable home environment for Child. However, although Mother was given the opportunity, time, and resources to remedy the conditions that led to removal of Child, Mother only began her efforts to regularly attend rehabilitation *after* the filing of the TPR petition and continues to struggle with securing a suitable home.

This Court acknowledges the evidence and testimony presented at the hearing that a bond exists between Mother and the Child, and that Mother exhibited an interest in parenting Child in the future. N.T., 5/6/16 at 27-28. As our Superior Court has observed:

> [T]he application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. This Court cannot and will not subordinate indefinitely a

10

child's need for permanence and stability to a parent's claims of progress and hope for the future.

*In re J.F.M.*, 71 A.3d 989, 997 (Pa. Super. 2013).

Here, based on the evidence and testimony, this Court concludes that Mother is unable to provide for the Child's essential parental care, control or subsistence, and that Child's welfare and her needs would be best served by termination of Mother's parental rights given Mother's ongoing failure to provide Child with stable and secure housing, Mother's own admissions to suffering from a drug dependency and ongoing mental health concerns, her failure to complete treatment programs, and her inability to meet her parenting obligations and provide the child with a stable, healthy, and secure environment.

This Court concluded, furthermore, that the conditions which led to the removal of Child continue to exist and could not be remedied, within a reasonable period of time, given Mother's repeated failure to secure appropriate housing, her recent arrests on drug charges, her ongoing substance abuse, and her unreliability and inability to comply with CYF family plan goals in the over two year period that has elapsed since Child's removal from Mother's home.

Finally, this Court, in terminating Mother's parental rights, considered the developmental, physical and emotional needs of Child pursuant to 23 Pa.C.S.A § 2511(b), and determined that termination was warranted. Based on the evidence and testimony of Dr. Bernstein together with that of April Rosenberger and Mother herself, this Court concluded that Child had developed a bond with paternal grandmother, who was able to provide the Child with a loving, stable and secure home environment, while Mother's repeated displays of instability and indications of substance abuse, would be detrimental to Child. In light of Mother's unreliability, her failure to complete rehabilitation and treatment and provide a stable housing

11

environment for Child, and her inability to provide Child with an environment of stability and security, this Court concluded that termination of Mother's parental rights would be in the best interests of Child.

## CONCLUSION

After careful review of the testimony and evidence this Court concludes that CYF established by clear and convincing evidence that grounds for termination of parental rights of Mother existed pursuant to 23 Pa. C.S.A. §§ 2511 (a)(2), (a)(5), and (a)(8) and that termination of parental rights best served the needs and welfare of Child. Based upon the foregoing, this Court's May 6, 2011 Order should be affirmed.

BY THE COURT:

_____J.

Dwayne D. Woodruff