J-S88032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| In the Interest of: M.A.B.-K., A Minor | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| Appeal of: C.D.C., Mother | : | No. 1686 EDA 2016 |

Appeal from the Order Entered April 26, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-000688-2015
CP-51-DP-0001460-2014, FID: 51-FN-001454-2014

| | | |
|---|---|---|
| In the Interest of: A.M.B.K., A Minor | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| Appeal of: C.D.C., Mother | : | No. 1687 EDA 2016 |

Appeal from the Order Entered April 26, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-000679-2015
CP-51-DP-0001461-2014, FID: 51-FN-001454-2014

| | | |
|---|---|---|
| In the Interest of: A.-B.I.K., A Minor | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| Appeal of: C.D.C., Mother | : | No. 1688 EDA 2016 |

Appeal from the Order Entered April 26, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-000687-2015
CP-51-DP-0001458-2014, FID: 51-FN-001454-2014

| | | |
|---|---|---|
| In the Interest of: U.I.K., A Minor | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| Appeal of: C.D.C., Mother | : | No. 1689 EDA 2016 |

Appeal from the Order Entered April 26, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-000684-2015
CP-51-DP-0001462-2014, FID: 51-FN-001454-2014

| In the Interest of: T.I.K., A Minor | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| Appeal of: C.D.C., Mother | : | No. 1690 EDA 2016 |

Appeal from the Order Entered April 26, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): 51-FN-001454-2014
CP-51-AP-000683-2015, CP-51-DP-0001450-2014

| In the Interest of: Z.B.K., A Minor | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| Appeal of: C.D.C., Mother | : | No. 1691 EDA 2016 |

Appeal from the Order Entered April 26, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-000682-2015
CP-51-DP-0001464-2014, FID: 51-FN-001454-2014

| In the Interest of: F.-D.I.K.K., A Minor | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| Appeal of: C.D.C., Mother | : | No. 1692 EDA 2016 |

Appeal from the Order Entered April 26, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-000681-2015
CP-51-DP-0001463-2014
FID: 51-FN-001454-2014

| In the Interest of: H.S.I.K., A Minor | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| Appeal of: C.D.C., Mother | : | No. 1693 EDA 2016 |

Appeal from the Order Entered April 26, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-000680-2015
CP-51-DP-0001459-2014, FID: 51-FN-001454-2014

J-S88032-16

BEFORE:   OLSON, RANSOM, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED JANUARY 19, 2017**

C.D.C. (Mother) appeals from the orders entered April 26, 2016, which terminated involuntarily her parental rights to eight of her children: A.-B.I.K. (A.B.K., born January 2004); H.S.I.K. (H.K., born June 2005); M.A.B.-K. (M.K., born June 2006); A.M.B.K. (A.K., born July 2007); U.I.K. (U.K., born September 2008); F.-D.I.K.K. (F.K., born November 2009); Z.B.K. (Z.K., born November 2011); and T.I.K. (T.K., born November 2012) (collectively, Children).[1]  We affirm.

Mother and L.D. (Father) are the biological parents of Children. On June 15, 2014, the Philadelphia County Department of Human Services (DHS) received a report regarding Mother and Children.[2]  Specifically, DHS learned that family members were trying to locate Mother and Children, but could not reach them.  It was believed Children were no longer attending school.  It was also believed that Mother was suffering from depression and was using drugs.  Mother was known to DHS because she had previously been involved with the agency in 2006 and 2007.[3]

---

* Retired Senior Judge Assigned to the Superior Court.

[1] On June 28, 2016, this Court *sua sponte* consolidated these appeals.

[2] At this point, Father was incarcerated.

[3] In April 2006, DHS received a report alleging that Mother was a victim of ongoing domestic violence by Father.  Specifically, Mother was raped by Father while the children were in the same room.  Additionally, another child

- 3 -

After spending several days attempting to locate Mother and Children, DHS found Children at a home without adult supervision on June 18, 2014.[4] Mother had been gone for two days at that point. N.K., the fourteen-year-old child of Mother and Father, was left in charge of all of the children. The home was dirty and contained no furniture other than three soiled mattresses. Children were hungry and had been walking around the neighborhood looking for food. Children's paternal aunt, A.D., had been trying to locate Children. She and her paramour, E.S., came immediately once DHS called her after finding Children. A.D. agreed to care for Children overnight; however, her home did not have enough space for all Children permanently.

On June 19, 2014, DHS obtained an order of protective custody for Mother's ten children because Mother's whereabouts were still unknown and Father was incarcerated. Children were taken for medical care, and DHS learned they were not up to date on their immunizations and Z.K., who was two years old, was diagnosed with failure to thrive. Children were placed in

---

of Mother and Father, N.K., was reported to have been sexually abused by an unknown family member. In October 2007, DHS received another report that alleged Mother abandoned Father and her children in a van after Father hit Mother. Mother went to get help and when she returned to the van, only her then sixteen-month-old child, M.K., and her then two-month-old child, A.K., were in the van. Father had left the van taking with him the older children.

[4] Ten children were found in the home, including, N.K., S.K. (who was thirteen years old) and Children. At that time, Children were ages ten, nine, eight, six, five, four, two, and a year-and-a-half.

sibling groups with caretakers. Specifically, S.K., N.K., U.K., and F.K. were placed with a maternal cousin. Z.K. and T.K. were placed together in a resource home through Friendship House. M.K. and A.K. were placed with a paternal aunt. H.K. and A.B.K. continued to live with A.D.

An adjudicatory hearing was held on June 30, 2014, and all ten children were adjudicated dependent and remained in placements with their respective caregivers. On August 7, 2014, DHS learned that Mother was in a detoxification program. Mother left that program later that month without completing it successfully. Mother's whereabouts remained unknown until October 2014. It was at that point Mother visited with Children for the first time. Between October and December 2015, Mother visited Children sporadically, but DHS did not have contact information for Mother.

Mother entered Interim House, an inpatient drug treatment program, on January 2, 2015. She was transferred to Jefferson Psychiatric Hospital the following week for suicidal ideations. Mother then left the program against medical advice on February 12, 2015. Mother continued visiting Children sporadically, although, once again, DHS did not have contact information for her.

On May 15, 2015, Mother, now pregnant with her eleventh child, tested positive for heroin and cocaine. Mother was then eligible for an inpatient treatment program at My Sister's Place, which she entered on June 4, 2015. On July 11, 2015, Mother gave birth to R.K. who was adjudicated

dependent, but was able to reside with Mother in My Sister's Place.[5] Mother has been compliant with her objectives since June of 2015.

On October 6, 2015, DHS filed petitions to terminate involuntarily the parental rights of Mother and Father to all ten children. Hearings were held on October 22, 2015, February 3, 2016, and April 26, 2016. On April 26, 2016, the parental rights of both Mother and Father were terminated for Children. Also on that day, the trial court granted the requests of DHS for permanent legal custody for N.K. and S.K., the two oldest children.

Mother filed notices of appeal as well as concise statements of errors complained of on appeal as to Children.[6] The trial court filed a single opinion addressing all Children on August 17, 2016.

On appeal, Mother contends that the trial court erred in granting DHS's petitions as to Children. We consider issues of the termination of parental rights mindful of the following.

> In cases involving the termination of a parent's rights, our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child.
>
> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand …. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

---

[5] R.K. is not involved in the present appeal.

[6] Father has not appealed these orders.

*In re C.W.U., Jr.*, 33 A.3d 1, 4 (Pa. Super. 2011) (quotation marks and citations omitted).

Our courts apply a two-part analysis in reviewing an order terminating parental rights. As we explained in *In re L.M.*,

> [i]nitially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

923 A.2d 505, 511 (Pa. Super. 2007).

Here, the trial court determined that DHS met its burdens under subsections (a)(1), (a)(2), (a)(5), and (a)(8) of 23 Pa.C.S. § 2511, as well as its subsection (b) burden. "While the trial court found that [DHS] met its burden of proof under each section [mentioned] above, we need only agree with its decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004). Here, we focus on subsection (a)(8). The following are the applicable portions of the governing statute.

> **(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> * * *
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1) … or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Section 2511(a)(8) represents the determination that "a parent's basic constitutional right to the custody and rearing of [her] … child is converted, upon the failure to fulfill … parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment."  *In the Interest of K.Z.S.*, 946 A.2d 753, 759-60 (Pa. Super. 2008) (quoting *In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004)).

Instantly, there is no dispute that Children had been out of Mother's care over 12 months at the time of the hearing.

> Once the 12–month period has been established, the court must next determine whether the conditions that led to the [children's] removal continue to exist, despite the reasonable

J-S88032-16

good faith efforts of [DHS] supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of [DHS] services.

***K.Z.S.***, supra at 759 (quoting ***In re Adoption of K.J.***, 936 A.2d 1128, 1133

(Pa. Super. 2007)).

Instantly, the trial court offered the following:

The record demonstrates Mother's whereabouts were unknown from the time [C]hildren entered care in June 2014 until August 2014, when she checked herself into a detoxification program. Mother then left the detoxification program against medical advice and her whereabouts were unknown again until mid-October 2014. Mother was then escorted to another program, where she refused to enter because she had a date with Father. She then entered into a program in January 2015, only to be transferred to a psychiatric facility for suicidal ideations. Then Mother left that facility against medical advice again. Mother's issues with mental health and substance abuse are substantiated on the record.

After hearing the credible testimony of the [Community Umbrella Agency (CUA)] Case Manager, the CUA Case Aide, the CUA Supervisor, and My Sister's Place Counselor, the [trial court] found by clear and convincing evidence, that their observations and conclusions regarding Mother's non-compliance with [family service plan] objectives, and lack of ability to fulfill her parental responsibilities were persuasive. Although Mother became compliant with [Single Case Plan (SCP)] goals as of four months prior to the filing of the petitions to terminate parental rights, she has yet to demonstrate an ability to meet her needs on her own. Mother clearly has no ongoing ability to provide care or control for her eight Children or perform any parental duties.

Trial Court Opinion, 8/17/2016, at 30-31 (unnecessary capitalization

omitted).

- 9 -

The trial court's conclusions are supported by the record. It took Mother almost a year from the time Children entered placement to gain any sense of stability. Moreover, the sense of stability she gained came through her residence in My Sister's Place, a highly structured environment which provides Mother with housing, meals, and mental health treatment. However, during that time, Mother gave birth to another baby, for whom she now has to care. In addition, Mother acknowledges that she is not able to care for Children at this juncture. N.T., 2/3/2016, at 115. Based on the foregoing, the record supports the trial court's finding that the "conditions which led to the removal or placement of [Children] continue to exist." 23 Pa.C.S. § 2511(a)(8).

We now turn to the other requirement under section 2511(a)(8), regarding the best interests of Children. Here, CUA Case Manager, Malea Gadson, testified about the placements for Children. *See* N.T., 4/26/2016. T.K. and Z.K. are placed in a resource home through Friendship House. *Id*. at 9. They are safe with their needs being met and have a bond with their resource mother. N.T., 10/22/2015, at 27. U.K., F.K., H.K. and A.B.K. are all together and placed with their maternal cousin who is meeting their needs.[7] N.T., 4/26/2016, at 9. M.K. and A.K. are with their paternal aunt and their needs are being met. *Id*. at 11, N.T., 10/22/2015, at 35. As Children are doing well in their placements, and are even able to remain in

---

[7] S.K. and N.K. live there as well.

sibling groups with some of the children in kinship placements, the record supports the trial court's finding that terminating Mother's parental rights is in the best interests of Children.

Accordingly, we conclude that the trial court did not err in finding that DHS met its burden under section 2511(a)(8). *See, e.g., In re C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*) ("[I]f we were to permit Mother further opportunity to cultivate an environment where she can care for C.L.G., we would be subjecting a child, who has been waiting for more than two years for permanency, to a state of proverbial limbo in anticipation of a scenario that is speculative at best.").

We next consider whether the trial court gave adequate consideration to the welfare of Children under section 2511(b). Mother argues that "she loves and misses her children." Mother's Brief at 19. However, "[w]hile a parent's emotional bond with … her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (citation and internal quotation marks omitted). "[T]he trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id.* (citation and internal quotation marks omitted).

Here, the trial court offered the following.

> [The trial court] finds credible the testimony from [CUA] workers that [] Children would not suffer irreparable harm if Mother's rights were terminated and that termination of Mother's parental rights would be in the best interest of [] Children. [] Children are currently in kinship care with various family members, and they are thriving and living in nurturing and loving homes with their caretakers, who meet all of their emotional and physical needs.

Trial Court Opinion, 8/17/2016, at 32.

In addition, the trial court offered the following summary of the situation this case presents.

> I had this case from the beginning and no one knows better than I that the parents cannot parent these other Children and that satisfies a requirement for termination and adoption.
>
> ***
>
> She (Mother) is only capable of parenting the most recently born child and that was a marginal decision because we had her in the facility where they were caring for her and the child. If she was on her own, that would not happen.
>
> ***
>
> And it's in the best interest of [C]hildren to have some permanency given the length of placement and the time that they will enjoy until they reach adulthood. They're entitled to that permanency and they're with family members who will give them that permanency.

*Id* (citing N.T., 4/26/2016, at 17-25.).

The record supports the trial court's conclusions. Children have been in a safe and stable environment in their placements for nearly two years and despite Mother's professed love Children, we agree with the trial court

that it is in Children's best interests to remain where they are with a sense of permanency. **See, e.g., L.M.,** 923 A.2d at 512 ("There was absolutely no evidence that severing the ties between Mother and L.M. would have a negative effect on the child.").

Therefore, because the record supports the trial court's conclusions (1) that the conditions that led to Children's placement continue to exist, and (2) that termination of Mother's parental rights is in Children's best interests, we hold that the trial court committed no error or abuse of discretion in granting DHS's petitions under section 2511(a)(8) and (b).

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/19/2017